IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN TARVER<br>3419 E. 66th Street<br>Cleveland, Ohio 44127<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>DELTA TRANZ, LLC<br>3901 Eastern Avenue, SE<br>Wyoming, Michigan 49508<br><br>　　**Serve also:**<br>　　Edina Duric<br>　　Statutory Agent<br>　　3901 Eastern Avenue<br>　　Wyoming, Michigan 49508<br><br>　　　-and-<br><br>EDINA DURIC<br>c/o Delta Tranz, LLC<br>3901 Eastern Avenue, SE<br>Wyoming, Michigan 49508<br><br>　　　-and-<br><br>EDDIE DURIC<br>c/o Delta Tranz, LLC<br>3901 Eastern Avenue, SE<br>Wyoming, Michigan 49508<br><br>　　　　　Defendants. | ))))))))))))))))))))))))))))))))))) | CASE NO.<br><br>JUDGE:<br><br><br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

　　　Plaintiff, John Tarver, by and through undersigned counsel, as his Complaint against the

Defendants, states and avers the following:

## PARTIES

1. Tarver is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.



2. Edina Duric is a resident of the state of Michigan.

3. Edina Duric operates a business which has sufficient minimum contacts with the state of Ohio.

4. Edina Duric was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Delta Tranz, LLC ("Delta Tranz") who acted directly or indirectly in the interest the company.

5. Eddie Duric is a resident of the state of Michigan.

6. Eddie Duric operates a business which has sufficient minimum contacts with the state of Ohio.

7. Eddie Duric was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Delta Tranz who acted directly or indirectly in the interest of the company.

8. Delta Tranz is a foreign limited liability company which operates a business located at 3901 Eastern Avenue, SE, Wyoming, Michigan 49508 and conducts business in and throughout the state of Ohio by transporting goods to and from customers and businesses located in the state of Ohio.

## JURISDICTION & VENUE

9. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Tarver is alleging a Federal Law Claim under the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. § 201 *et seq*.

10. Delta Tranz conducted business in the state of Ohio.

11. Delta Tranz availed itself to the laws of the state of Ohio.

12. Tarver received and deposited his checks in the state of Ohio.



13. This Court has supplemental jurisdiction over Tarver's state law claims pursuant to 28 U.S.C. § 1367 as Tarver's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. Tarver is a former employee of Delta Tranz.

16. Delta Tranz hired Tarver as a driver on or about April 4, 2017.

17. Delta Tranz compensated Tarver at a rate of 43 cents a mile during his employment.

18. Delta Tranz compensated Tarver on a weekly basis.

19. During Tarver's employment, a mirror on a truck he drove for Delta Tranz was damaged.

20. The mirror on the truck was damaged while Tarver was performing work for Delta Tranz.

21. Tarver attempted to repair the mirror to the best of his ability.

22. Upon information and belief, the cost to repair the mirror should have been approximately $ 20.00.

23. Upon information and belief, Edina Duric is a mechanic.

24. Upon information and belief, Edina Duric should have been able to repair the damaged mirror at little expense to Delta Tranz.

25. Delta Tranz claimed that the damage cost approximately $ 900.00.

26. Delta Tranz charged Tarver for the amount of the damage.

27. Delta Tranz never informed Tarver that employees would be liable for work related damages.

28. To cover the damage, Delta Tranz withheld $ 900.00 from one of Tarver's paychecks.

29. After the $ 900.00 withholding on Tarver's paycheck, Delta Tranz compensated Tarver a weekly amount of $ 400.00.

3



30. For the week that Delta Tranz compensated Tarver $ 400.00 due to the withholding, Tarver had performed well over 100 hours of work for Delta Tranz.

31. As a truck driver, Tarver is not exempt from the minimum wage requirements of the FLSA.

32. Due to the withholding on Tarver's check, he made far below the minimum wage.

33. During Tarver's employment, Delta Tranz instructed Tarver to drive a truck that did not meet Department of Transportation ("DOT") regulations.

34. DOT promulgates regulations and guidelines that trucking companies must follow.

35. DOT's regulations, policies, and guidelines are promulgated to promote safety of the public.

36. Tarver noticed that his truck was not performing to the standards, regulations, policies, and guidelines promulgated by DOT.

37. Tarver noticed that the truck Delta Tranz instructed him to drive was a hazard to the public at large.

38. As soon as Tarver realized the truck was unsafe to operate, he sent text messages to Delta Tranz's owners, Edina and Eddie Duric.

39. Tarver texted Edina and Eddie Duric that the truck he was instructed to operate required immediate maintenance.

40. Tarver texted Edina and Eddie Duric that the truck he was instructed to operate was a hazard to the public at large.

41. Tarver texted Edina and Eddie Duric that the truck he was instructed to operate did not conform to the guidelines and policies promulgated by DOT.

42. Delta Tranz knew that the truck it instructed Tarver to operate was unsafe to operate.

43. Delta Tranz knew that the truck it instructed Tarver to operate violated DOT regulations.



44. Tarver gave Delta Tranz a reasonable amount of time after making a report concerning the truck for Delta Tranz to remedy the problems reported.

45. Delta Tranz instructed Tarver to continue driving the unsafe truck.

46. Delta Tranz failed to take any measures to fix or maintain the truck.

47. Due to the malfunctions in the truck, Tarver got into an accident.

48. The truck's engine overheated and began to smoke.

49. The truck's malfunctions caused Tarver to almost drive over a cliff.

50. Immediately after the incident where the truck almost went over the cliff, Tarver texted his bosses to let them know that he refused to continue driving this unsafe vehicle.

51. Tarver knew from experience that it was against trucking guidelines and regulations to continue driving this vehicle without the necessary maintenance.

52. As Tarver knew that the truck was unsafe to operate and did not meet DOT regulations, he texted his bosses that he could not in good conscience, continue driving the truck.

53. Tarver was forced to contact 911 to seek emergency attention.

54. With the aid of police, Tarver was able to keep the truck from being further damaged.

55. Police and emergency personnel were able to keep the truck from lighting on fire.

56. Due to the damage to the truck, Tarver had to request that the police tow his car to the nearest motel.

57. The police arranged for the truck to be towed to the nearest motel.

58. The following morning, Tarver awoke to find that the truck was missing.

59. Tarver immediately contacted the police to alert them of the missing truck.

60. The police informed that Delta Tranz had arranged for the truck to be towed back to Delta Tranz.

The Employee's Attorney.™

61. Only after contacting the police concerning the missing truck, did Tarver learn that Delta Tranz had terminated his employment.

62. Delta Tranz terminated his employment for refusing to drive the truck.

63. Tarver refused to drive the truck as it violated DOT regulations.

64. Tarver refused to drive the truck as it posed a safety risk to the public at large.

65. When Delta Tranz recovered the truck, many of Tarver's personal belongings were still inside the driver's compartment.

66. Tarver has contacted Delta Tranz on multiple occasions requesting to have his personal belongings returned.

67. Delta Tranz has continually refused to return his belongings.

68. Following Tarver's termination, Delta Tranz refused to provide Tarver with his final two weeks of pay.

69. Delta Tranz has not compensated Tarver for his last two weeks of work.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

**(Against Delta Tranz, LLC)**

70. Tarver restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Delta Tranz made deductions to Tarver's paycheck.

72. The deductions and/or withholdings Delta Tranz made to Tarver's paycheck resulted in Tarver being compensated at a rate below the federal and state minimum wage.

73. Although Delta Tranz engaged Tarver as a truck driver, Delta Tranz was still required, per the FLSA, to compensate him at a rate at or above the federal minimum wage.

74. As a result, Delta Tranz failed to pay Tarver at a wage rate required under 29 U.S.C. § 206.



75. As a direct and proximate cause of Delta Tranz's conduct, pursuant to 29 U.S.C. § 216(b), Delta Tranz is liable to Tarver for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages, as well as costs and reasonable attorney fees.

76. By engaging in the above-mentioned conduct, Delta Tranz willfully, knowingly and/or recklessly violated the provisions of the FLSA.

77. As a result of Delta Tranz's practices and policies, Tarver has been damaged in that they have not received wages due to them pursuant to the FLSA.

### COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
**(Against All Defendants)**

78. Tarver restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. A clear public policy exists and is manifested in Ohio and Federal statutes, as well as administrative regulations, to promote the public safety concerning truck drivers.

80. Tarver made complaints to Defendants concerning what he reasonably believed to be violations to federal and state law, and DOT regulations.

81. Defendants refused to take measures to remedy the violations.

82. Defendants terminated Tarver for making protected complaints.

83. Defendants terminated Tarver for attempting to comply with the DOT regulations.

84. Defendants' termination of Tarver jeopardizes these public policies.

85. Defendants' termination of Tarver was motivated by conduct related to these public policies.

86. Defendants had no overriding business justification for terminating Tarver.



87. As a direct and proximate result of Defendants' conduct, Tarver has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT III: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.

### (Against all Defendants)

88. Tarver restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. On multiple occasions Tarver reported to all Defendants that the truck he was instructed to operate violated DOT regulations.

90. On multiple occasions, Tarver reported to all Defendants that the truck he was instructed to operate threatened public health or safety.

91. Tarver reasonably believed that operating his truck violated DOT regulations and threatened the public health or safety.

92. Tarver verbally complained to Defendants regarding this conduct.

93. Tarver complained to Defendants in writing regarding this conduct.

94. Tarver gave Defendants an opportunity to cure the reported misconduct.

95. Defendants retaliated against Tarver by terminating his employment based on his complaints regarding this conduct.

96. Defendants' termination of Tarver was in violation of O.R.C. § 4113.52.

97. As a direct and proximate result of Defendants' conduct, Tarver suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

The Employee's Attorney.™ 

## COUNT IV: VIOLATION OF THE OHIO WAGE ACT

### (Against All Defendants)

98. Plaintiff restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* O.R.C. §§ 4111.01, et seq.

100. During all times material to this Complaint, Delta Tranz was a covered employer required to comply with the Ohio Wage Act's mandates.

101. During all times material to this Complaint, Plaintiff was a covered employee entitled to individual protection of Ohio Wage Act.

102. Defendants violated the Ohio Wage Act with respect to Plaintiff by, *inter alia*, failing to compensate Plaintiff for withholding an amount from Plaintiff's check whereby compensating him at a rate below minimum wage.

103. In violating the Ohio Wage Act, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## COUNT IV: UNJUST ENRICHMENT

### (Against All Defendants)

104. Tarver restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. During Tarver's employment with Delta Tranz, he left many personal belongings in the truck that he was instructed to drive.

106. The personal belongings Tarver had in the truck were worth well over $ 1,000.00.



107. When Delta Tranz terminated Tarver, it took the truck away from him without him knowing that it was taking the truck.

108. When Delta Tranz took the truck, it retained all of Tarver's personal belongings.

109. Tarver has made multiple attempts to contact Delta Tranz in order to receive his personal belongings.

110. Delta Tranz has made no effort to return Tarver's personal belongings.

111. Defendants acknowledged, accepted, and benefited from the value provided by Tarver.

112. Defendants had no reason to believe that they were entitled to retain Tarver's personal belongings.

113. It would be inequitable for Defendants to enjoy the benefit of the value provided by Tarver without compensating him.

## **DEMAND FOR RELIEF**

WHEREFORE, Tarver demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Tarver for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) An award of reasonable attorneys' fees and non-taxable costs for Tarver's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.



Respectfully submitted,

*/s/ Daniel S. Dubow*
Fred M. Bean (0086756)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  fred.bean@spitzlawfirm.com
       daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff John Tarver demands a trial by jury by the maximum number of jurors permitted.

*/s/ Daniel S. Dubow*
Fred M. Bean (0086756)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**

