UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

JOHN TARVER,  :  CASE NO. 1:17-cv-01963

    Plaintiff, :

v. : OPINION & ORDER
: [Resolving Doc. No. 10]

DELTA TRANZ, LLC, et al. :

    Defendants. :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff John Tarver moves for summary judgment against Defendants Delta Tranz, LLC, Edina Duric, and Eddie Duric ("Defendants").[1] Defendants have failed to respond to Plaintiff Tarver's request for admissions or his motion for summary judgment.[2]

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Tarver's motion for summary judgment.

## I. Background

Defendants previously employed Plaintiff Tarver as a truck driver from April 4, 2017 until his termination on May 28, 2017.[3] He was compensated on a weekly basis at the rate of forty-three cents per mile.[4] He drove approximately 4,000 miles per week for Defendants.[5]

While working for Defendants, Tarver noticed that his truck was not in compliance with the Department of Transportation's ("DOT") guidelines and policies.[6] The truck was also a

---

[1] Doc. 10.
[2] *See* Doc. 9; Doc. 12.
[3] Doc. 10-1 at ¶¶ 2, 29.
[4] *Id.* at ¶¶ 3-4.
[5] *Id.* at ¶ 5.
[6] Doc. 1 at ¶ 36.

hazard to the public at large.[7] Tarver notified Defendants via text message that his truck was unsafe and non-compliant with DOT guidelines and policies.[8]

Despite their knowledge of the faults with Tarver's truck, Defendants instructed Tarver to continue driving the vehicle.[9] Defendants did not make any attempts to repair the truck before ordering Tarver to drive it.[10]

Because of the truck's deficiencies, Tarver got into an accident.[11] While he was driving the truck, the truck's engine overheated, and Tarver almost drove off of a cliff as a result.[12] Immediately after the accident, Tarver informed Defendants that he refused to continue driving the vehicle.[13] Because of his experience in the trucking industry, Tarver knew that continuing to drive the truck was against the applicable trucking guidelines and regulations.[14]

Tarver had the truck towed to a local motel, where he stayed the night.[15] When he woke up the next morning, he discovered that Defendants had the truck towed from the motel back to them.[16] Defendants fired Tarver almost immediately after this event.[17] Defendants fired Tarver because he was unwilling to continue driving the truck.[18]

---

[7] *Id.* at ¶ 37.
[8] *Id.* at ¶¶ 38-41.
[9] *Id.* at ¶ 45.
[10] *Id.* at ¶ 46.
[11] *Id.* at ¶ 47.
[12] *Id.* at ¶¶ 48-49.
[13] *Id.* at ¶ 50.
[14] *Id.* at ¶ 51.
[15] *Id.* at ¶¶ 56-58.
[16] *Id.* at ¶¶ 58-60.
[17] *Id.* at ¶ 61.
[18] *Id.* at ¶ 62.

Tarver kept a number of personal belongings in the truck at the time of the accident.[19] He has not been able to collect these belongings after Defendants had the truck towed, and Defendants have refused to return them.[20]

After firing Tarver, Defendants refused to pay him for his previous weeks of work.[21] As of this date, he has still not been paid for his final two-and-a-half weeks of driving for Defendants.[22]

During his employment, the mirror on a truck that Tarver drove for Defendants became damaged.[23] Tarver states that this mirror was damaged in the course of his employment with Defendants.[24] Defendants deducted $900.00 from Plaintiff Tarver's pay to repair this mirror.[25] Defendants never informed Tarver that he was responsible for the cost of repairs to his vehicle.[26] Tarver estimated the repair should cost only $20.00.[27] Because of the $900.00 deduction from his pay, Tarver was paid below the minimum wage for his work during that pay period.[28]

## II. Legal Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[29] The moving party bears an initial burden of pointing to facts in the record that entitle

---

[19] *Id.* at ¶ 65.
[20] *Id.* at ¶¶ 65-67.
[21] *Id.* at ¶¶ 68-69.
[22] *Id.*
[23] *Id.* at ¶ 19.
[24] *Id.* at ¶ 20.
[25] *Id.* at ¶¶ 25-26.
[26] *Id.* at ¶¶ 22, 27.
[27] *Id.*
[28] *Id.* at ¶¶ 29-32.
[29] Fed. R. Civ. P. 56(c).

Case No. 1:17-cv-1963
Gwin, J.

it to summary judgment. Once the moving party has met this burden, the non-moving party "must set forth specific facts showing there is a genuine issue for trial."[30]

If a motion for summary judgment goes unopposed, a reviewing court is not required to "conduct its own probing investigation of the record" and may properly rely on the facts provided by the moving party.[31] A court is only required to "intelligently and carefully review the legitimacy of such an unresponded-to motion" in order to determine whether the movant has met their initial burden.[32]

Similarly, if a party fails to respond to a request for admissions within thirty days of being properly served, those matters are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).

### III. Analysis

Tarver brings claims under the Fair Labor Standards Act (FLSA),[33] the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"),[34] and the Ohio whistleblower statute,[35] as well as claims for wrongful termination in violation of public policy and unjust enrichment. Tarver bases his motion for summary judgment on these claims on several affidavits, his complaint, and unanswered requests for admissions.[36] The Court addresses each claim in turn.

---

[30] Fed. R. Civ. P. 56(e).
[31] *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).
[32] *Id.*; *see also Allstate Ins. Co. v. Das*, 86 F. Supp. 3d 716, 724-25 (E.D. Mich. 2015).
[33] 29 U.S.C. §§ 206(a), 207(a).
[34] Ohio Rev. Code §§ 4111.03, 4111.10.
[35] Ohio Rev. Code § 4113.52.
[36] Tarver served these requests for admissions on Defendants on October 26, 2017, and they have still not responded to them. *See* Doc. 7. The Court therefore deems the matters addressed in Tarver's October 26, 2017 requests for admissions admitted and part of the record for purposes of summary judgment. *See Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, No. 4:08-cv-2830, 2010 WL 395212, at *3 (N.D. Ohio Jan. 22, 2010) ("Matters deemed admitted from a failure to respond to requests for admissions can serve as a basis for a summary judgment motion.").

Case No. 1:17-cv-1963
Gwin, J.

**A. FLSA and Ohio Wage Act Claims**

Tarver is entitled to summary judgment on his FLSA and Ohio Wage Act claims. Both acts require employers to pay their employees a minimum wage for each hour worked.[37] Defendants have admitted that they employed Plaintiff Tarver, and that they failed to compensate him at or above the minimum wage for the period of time in question.[38]

Tarver alleges that Defendants did not pay him at all for his final two weeks of work. Tarver's entitlement to pay for those final two weeks of work is clear, as Defendants admit that they have not paid him at all for that work.[39]

Tarver also presented evidence that Defendants deducted the repair cost of his truck's mirror from his check, which caused him to receive less than the minimum wage. Both the Sixth Circuit and the Department of Labor have found an FLSA violation where a deduction taken from an employee's paycheck for equipment required for the employee to complete their work decreases the employee's pay below the minimum wage.[40] Tarver is therefore entitled to summary judgment on this claim as well.

As such, Plaintiff Tarver is entitled to summary judgment on his FLSA and Ohio Wage Act claims relating to both Defendants' failure to pay him for his final two weeks of work and Defendants' impermissible deduction for a broken mirror. The Court **GRANTS** Tarver's motion for summary judgment on both of these claims.

---

[37] *See Hurt v. Commerce Energy, Inc.*, No. 12-cv-758, 2013 WL 4427255, at *1 (Aug. 15, 2013).
[38] *See* Doc. 10-3 at 5-7 (Requests for Admission 1, 8, 10).
[39] *See id.* at 7 (Request for Admission 10).
[40] *See Marshall v. Root's Restaurant, Inc.*, 667 F.2d 559, 560 (6th Cir. 1982); *see also* 29 C.F.R. § 531.35 (noting that "there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act").

Case No. 1:17-cv-1963
Gwin, J.

**B. Ohio Whistleblower Claim**

Tarver's Ohio Whistleblower claim fails. "For an employee to be afforded protection as a 'whistle blower,' he or she must strictly comply with the requirements of [Ohio Revised Code §] 4113.52. An employee who fails to do so is barred from claiming the protections of the statute."[41]

The Ohio Whistleblower Statute requires an employee to fulfill three requirements. First, the employee may either orally notify their employer of a violation and follow that oral notification with a sufficiently detailed written report, or the employee may simply file the written report.[42] Next, the employee must give the employer twenty-four hours to make a good-faith effort to resolve the issue.[43] Third and finally, if, after twenty-four hours, the employer has not taken good-faith steps to fix the problem, the employee must report the employer's violation to a relevant outside authority.[44]

As an initial matter, Tarver has not provided a copy of the text messages that he alleges satisfied the statute's written report requirement, and no other piece of evidence details what these text messages actually said. This lack of evidence could preclude summary judgment on its own.[45]

---

[41] *Wood v. Dorcas*, 757 N.E.2d 17, 21 (Ohio Ct. App. 2001).
[42] *See id.* (citing Ohio Rev. Code § 4113.52).
[43] *Id.*
[44] *Id.*
[45] *See, e.g.*, *Behm v. Progress Plastic Prods., Inc.*, 2007 WL 4216971, at *5 (Ohio Ct. App. 2007) (analyzing the text of messages purporting to fulfill the whistleblower statute's reporting requirement and denying summary judgment because "[t]he abovementioned messages lacked what the statute demands: sufficient detail to *identify and describe* a specific safety violation").

Even assuming, however, that the text messages do satisfy the written report requirement, there is no evidence that Tarver ever made a report to one of the outside authorities listed in the statute.[46] This failure is also fatal to his whistleblower claim.[47]

The Court **DENIES** Tarver's motion for summary judgment on his Ohio Whistleblower Act claim.

## C. Wrongful Termination in Violation of Public Policy

Tarver alleges that Defendants' terminated him in violation of public policy. He states that Defendants' violated the public policy of public safety because his truck violated DOT regulations and was unsafe to the public at large.

> In order to support a claim for discharge in violation of public policy, a plaintiff must demonstrate (1) the existence of a clear public policy sufficient to justify an exception to the employment-at-will doctrine that is manifested in a state or federal constitution, statute, administrative regulation, or common law (the "clarity" element); (2) that the dismissal of employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy" element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element); and (4) that the employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element).[48]

The first element of this test, the clarity element, is a determination of law that the Court must make.[49] The Court finds that Plaintiff Tarver's claim fails on this element as a matter of law: he has not identified a sufficiently clear public policy.

---

[46] *See* Ohio Rev. Code § 4113.52 (allowing an employee to file a report with "the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged").
[47] *Behm*, 2007 WL 4216971, at *5 ("Appellant's failure to strictly adhere to the dictates of [Ohio Revised Code §] 4113.52 . . . prohibits him from claiming the protections of the statute.").
[48] *Zajc v. Hycomp, Inc.*, 873 N.E.2d 337, 341-42 (Ohio Ct. App. 2007).
[49] *Id.* at 342.

Although Tarver argues that the truck he drove violated DOT regulations, he never identifies any specific regulation or regulations that Defendants violated.[50] Similarly, although Tarver argues that his truck was unsafe to the public at large, merely hand-waving in the direction of a danger to the public does not sufficiently identify a specific violated public policy. This is especially so when Tarver does not even identify what about the truck violated DOT regulations and made it unsafe to drive.

Tarver has provided no authority that suggests that his invocation of DOT regulations and public safety generally is sufficient to satisfy the clarity element, and the Court has found no such authority in its own research.

For this reason, the Court **DENIES** Tarver's motion for summary judgment on his termination in violation of public policy claim.

**D. Unjust Enrichment**

Plaintiff Tarver is entitled to summary judgment on his unjust enrichment claim. To prevail on this claim, Tarver must prove that (1) he conferred a benefit on Defendants; (2) that Defendants were aware of that benefit; and (3) that Defendants "retained that benefit under circumstances in which it would be unjust for [them] to retain that benefit."[51] "The goal of an unjust enrichment claim is 'to prevent one from retaining property to which he is not justly entitled,' not to compensate the plaintiff for a loss."[52]

---

[50] *Cf. Keehan v. Certech, Inc.*, No. 5:15-cv-1236, 2015 WL 8483179, at *7 (N.D. Ohio Dec. 10, 2015) (finding that the "clarity" element of a plaintiff's wrongful termination claim was met when he cited a relevant specific statute in addition to "a myriad of Ohio and Federal laws").
[51] *San Allen, Inc. v. Buehrer*, 11 N.E.3d 739, 782 (Ohio Ct. App. 2014).
[52] *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 459 (6th Cir. 2017) (quoting *San Allen*, 11 N.E.3d at 781).

Case No. 1:17-cv-1963
Gwin, J.

Defendants have Tarver's personal property that he left in his truck before they fired him. This property has monetary value that qualifies as a benefit conferred to Defendants.[53] Tarver has informed Defendants that they have this property multiple times.[54] Defendants have offered no reason why it would be just for them to retain personal property that does not belong to them, and the Court can think of none.

The Court **GRANTS** Tarver's motion for summary judgment on his unjust enrichment claim.

**E. Damages**

Tarver is entitled to damages on his successful FLSA, Ohio Wage Act, and unjust enrichment claims.[55]

For his FLSA and Ohio Wage Act claims Defendants must pay Tarver at least $7.25 (the minimum wage) for each hour worked in economic damages,[56] as well as an equal amount in liquidated damages.[57] The Court applies that rule here.

For his FLSA and Ohio Wage Act claim regarding an impermissible deduction for a mirror repair, Tarver is entitled to $107.50 in economic damages and $107.50 in liquidated damages.[58] Similarly, because of Defendants' failure to pay Tarver for his final two weeks of work, Tarver is entitled to $1,268.75 in economic damages and $1,268.75 in liquidated damages.[59]

---

[53] *Cf. id.* at 781 ("Unjust enrichment occurs where a person has and retains money or benefits which in justice and in equity belong to another.") (internal quotations omitted); *see also* Doc. 10-1 at ¶ 19 (valuing Tarver's personal property at approximately $2,502.17).
[54] *Id.* at ¶ 20.
[55] *See, e.g.*, *Jasar Recycling, Inc.*, 2010 WL 395212, at *10-11 (awarding damages after a defendant failed to respond to a request for admissions and summary judgment motion).
[56] *See* 29 U.S.C. § 206(a)(1)(C).
[57] 29 U.S.C. § 216(b).
[58] $7.25 * 70 hours worked - $400 previously paid = $107.50. *See* Doc. 10 at 23; Doc. 10-1 at ¶ 15.
[59] $7.25 * 175 hours worked = $1,268.75. *See* Doc. 10 at 23; Doc. 10-1 at ¶¶ 22-23.

Case No. 1:17-cv-1963
Gwin, J.

Both the Ohio Wage Act and FLSA also allow attorney's fees and court costs for violations like these.[60] Tarver is entitled to $4,505.00 in attorney's fees and $484.00 in court costs.[61]

Finally, Tarver is entitled to either the return of his personal property or $2,502.17, the value of that property, in damages on his unjust enrichment claim.[62]

In total, Tarver is entitled to $5,254.67 in damages,[63] $4,505.00 in attorney's fees, and $484.00 in court costs.

### IV. Conclusion

The Court **GRANTS** Plaintiff Tarver's summary judgment motion as to his FLSA, Ohio Wage Act, and unjust enrichment claims. The Court **GRANTS** Tarver's request for damages, attorney's fees, and court costs on those claims in the amount of $5,254.67 in damages, $4,505.00 in attorney's fees, and $484.00 in court costs. The Court **DENIES** Plaintiff Tarver's motion for summary judgment as to his termination in violation of Ohio public policy and whistleblower claims.

IT IS SO ORDERED.

Dated: February 22, 2018   s/        *James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE

---

[60] Ohio Rev. Code § 4111.10(A); 29 U.S.C. § 216(b).
[61] Doc. 10-4 at ¶¶ 2, 4.
[62] *See* Doc. 10-1 at ¶ 19.
[63] Alternately Defendants could pay Tarver $2,752.50 in damages and return his personal property to him.

-10-